UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> DUSTIN CHAD LAWSON, ) <br> ) <br> Defendant. ) <br> ) <br> ) | 6:13-CR-32-GFVT-HAI-2 <br><br> RECOMMENDED DISPOSITION |

\*\*\* \*\*\* \*\*\* \*\*\*

On referral from District Judge Van Tatenhove (D.E. 270 at 2), the Court considers reported violations of supervised release conditions by Defendant Dustin Lawson. Judge Van Tatenhove entered a Judgment against Defendant on April 18, 2014, for one count of conspiracy to distribute oxycodone, in violation of 21 U.S.C. § 846. D.E. 174 at 1. Defendant was sentenced to forty months of imprisonment followed by three years of supervised release. *Id*. at 2-3. Defendant began his initial term of supervised release on November 30, 2015. D.E. 238 at 1.

On May 5, 2016, the United States Probation Office ("USPO") submitted a Supervised Release Violation Report and subsequently submitted an Addendum. *Id*. The Supervised Release Violation Report and Addendum alleged that Defendant failed to report to the probation officer as directed on various occasions, left the judicial district without permission, and failed to notify the probation officer at least ten days prior to any change in residence or employment. *Id.* at 4. The parties jointly requested that the undersigned release Defendant subject to the condition that he enroll in and complete a thirty-day inpatient substance abuse treatment program. *Id.* at 5. The undersigned adopted the parties' request and Defendant appeared before

the undersigned for an allocution hearing after he completed treatment. *Id*. The undersigned recommended that the District Judge adopt the parties' joint recommendation that Defendant remain on supervised release for the original period, and under the conditions previously imposed, with the added condition that he be required to disclose the nature and circumstances of his conviction in this Court and his drug abuse history to any physician prescribing a controlled substance to him. *Id*. at 7-8. The District Judge accepted that recommendation on July 26, 2016. D.E. 240; D.E. 241.

On January 25, 2018, the USPO issued another Supervised Release Violation Report (the "January 25 Report") after Defendant reported to the USPO on January 12, 2018, and submitted a urine sample that ultimately tested positive for norfentanyl, the metabolite of fentanyl. D.E. 269 at 2. The January 25 Report alleged that Defendant used fentanyl in violation of Standard Condition #7, committed a federal, state or local crime based on his criminal history and the possession of fentanyl, which is a violation of 21 U.S.C. § 844(a) and a Class E felony, and failed to truthfully answer the inquiries by his probation officer. *Id*. at 2-3. After an evidentiary hearing (D.E. 263) and additional argument by the parties (D.E. 267), the undersigned recommended that Defendant be found not guilty of the violations alleged in the January 25 Report (D.E. 269). On May 1, 2018, Judge Van Tatenhove held a hearing regarding the violations alleged in the January 25 Report, and the undersigned's recommendation remains pending. *See* D.E. 299.

**I.**

On March 22, 2018, the USPO submitted the Supervised Release Violation Report (the "March 22 Report") that initiated these proceedings. The Report charges Defendant with three violations of his supervised release. First, as Violation #1, the Report alleges that Defendant

2

violated Special Condition #6, which requires him to "notify the USPO immediately (i.e. within no later than 72 hours) if Defendant receives any prescription for a medication containing a controlled substance." Specifically, the Report alleges that Defendant received two doses of morphine, one dose of Percocet, one dose of Dilaudid, and a prescription for twelve Percocet five milligram tablets on March 13, 2018, and did not notify the USPO until March 16. This is a Grade C violation. As Violation #2, the Report alleges that Defendant violated Standard Condition #6, which requires him to "notify the probation officer at least ten days prior to any change in residence." Specifically, the Report alleges that Defendant moved from his reported address in August 2017, and continued to tell his probation officer that he lived at his former address. He most recently reported living at his former address on January 12, 2018. *See* D.E. 254. The USPO provided a letter confirming that Defendant was the leaseholder of the apartment at the new unreported address as of July 20, 2017. This is a Grade C violation. As Violation #3, the Report charges that Defendant violated Standard Condition #3, which requires him to "answer truthfully all inquiries by the probation officer." This violation is based on Defendant's untruthful statements regarding his place of residence. This is a Grade C violation.

On April 6, 2018, the Court conducted an initial appearance regarding the violations alleged in the March 22 Report, and set a final hearing on the violations. D.E. 276. The United States did not move for detention and Defendant was released on his current conditions of supervision. *Id*.

At the final hearing on May 2, 2018, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 300. Defendant competently entered a knowing, voluntary, and intelligent stipulation to Violations #2 and #3. *Id*. The United States moved to dismiss Violation

#1.  *Id*.  For purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for Violations #2 and #3 as described in the March 22 Report.

## II.

The Court has evaluated the entire record, the Report and accompanying documents, and the sentencing materials from the underlying Judgment.  Additionally, the Court has considered all of the § 3553 factors incorporated into the § 3583(e) analysis.  Under 18 U.S.C. § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction.  18 U.S.C. § 3583(e)(3).  Defendant was convicted of conspiracy to distribute oxycodone, a Class C felony.  *See* 21 U.S.C. § 841(b)(1)(C); 18 U.S.C. § 3559(a)(3).  Defendant's conviction carries a two-year maximum period of incarceration upon revocation.  18 U.S.C. § 3583(e)(3).  There is no maximum term of supervised release that may be re-imposed.  18 U.S.C. § 3583(h); 21 U.S.C. § 841(b)(1)(C).  The Policy Statements in Chapter 7 of the Sentencing Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the particular violation proven.  *See United States v. Perez-Arellano*, 212 F. App'x 436, 438-39 (6th Cir. 2007) ("Although the policy statements found in Chapter Seven of the United States Sentencing Guidelines recommend ranges of imprisonment, U.S.S.G. § 7B1.4, such statements are 'merely advisory' and need only be considered by the district court before sentence is imposed.") (citation omitted).  Under Section 7B1.1, Defendant's admitted conduct would qualify as Grade C violations.  Given Defendant's criminal history category of V (the category at the time of the conviction in this District) and Grade C violations, his range, under the Revocation Table of Chapter 7, is seven to thirteen months.  U.S.S.G. § 7B1.4(a).

The parties jointly recommended a sentence of twelve months and one day of imprisonment, anticipated to run concurrently with any sentence potentially imposed pursuant to the January 25 Report, followed by no term of supervised release.[1]  In support of this recommendation, the United States emphasized Defendant's extended history of noncompliance, including his previous violations for failing to report to the probation officer as directed, leaving the judicial district without permission, and failing to notify his probation officer at least ten days prior to any change in employment.  The United States argued that Defendant's current violations mirror his previous violations.  Regarding the need to deter future criminal conduct, the United States argued that incarceration is necessary because Defendant continues to refuse to comply with the conditions of his supervision.  Additionally, the government argued that Defendant's current violations constitute breaches of the Court's trust and reflect his overall disregard for the conditions of his supervised release.  The government noted that the nature of Defendant's underlying offense is disconnected from his current violations and, therefore, the need to protect the public is lessened in this case.

Defense counsel agreed with the government and argued that a longer period of incarceration in lieu of supervised release would sufficiently deter future criminal conduct. Defendant directly addressed the Court and apologized to the USPO, the Court, and his family for his actions.  He expressed shame for violating his supervised release and took responsibility for his actions.  Defendant said he wanted to learn from these experiences in order to ultimately become a better father figure for his children.

---

[1] Before conducting the final hearing, the Court offered the parties the option of postponing the hearing until the objections to the undersigned's recommendations concerning the January 25 Report are resolved.  The parties, and the Court, were aware that, in the event Judge Van Tatenhove sustains those objections and find Defendant guilty of the violations initiated by the January 25 Report, he may refer sentencing on those violations back to the undersigned.  The parties and the Court chose to proceed, but recognize that the government represented it will seek concurrent sentences. Notably, following the final hearing, Defendant was ordered to self-report on May 7 to be taken into custody.  D.E. 300.

### III.

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the § 3583(e) analysis, as well as the Guidelines Range. The nature and circumstances of Defendant's underlying conviction are serious. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release). Defendant was involved in a large scale drug trafficking scheme that posed a significant danger to the community.

The Court has also considered Defendant's history and characteristics. His criminal history demonstrates a pattern of noncompliance with the law and with the Court's expectations during his supervised release. It is unclear whether the need to protect the public or deter criminal conduct is strong in this case because it is unknown why Defendant chose to lie about his residence to his probation officer. These violations do not present a need for additional education, training, or treatment.

The Court reminds Defendant that the Guidelines suggest that the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender; the particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). Defendant's breaches of the Court's trust are significant. He consistently deceived the USPO about his residence after the Court previously showed leniency for similar violations. This deception is unacceptable. Incarceration is necessary to address Defendant's breach of the court's trust.

The need to avoid unwarranted sentencing disparities is addressed by a sentence within Defendant's Guidelines Range. For the reasons stated above, the Court finds that a sentence of twelve months and one day of imprisonment is sufficient, but not greater than necessary, to meet the § 3553(a) factors incorporated into this analysis. *See* 18 U.S.C. § 3583(e).

A court also may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration actually imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). The post-revocation cap depends on the "term of supervised release authorized by statute for the offense that resulted in the original term of supervised release." *See* 18 U.S.C. § 3583(h). There is no maximum term of supervised release that may be re-imposed upon revocation. 18 U.S.C. § 3583(h); 21 U.S.C. § 841(b)(1)(C).

The parties jointly recommended no term of supervised release to follow incarceration. Defendant has consistently been unwilling to take advantage of the USPO's resources and the Court's trust while on supervision. His pattern of noncompliance demonstrates that he is not a good candidate to benefit fully from resources that may be provided during supervised release, and the Court believes that others can benefit more from an investment of the public's resources. Accordingly, supervised release is inappropriate following imprisonment.

Based on the foregoing, the Court **RECOMMENDS**:

1. Dismissal of Violation #1;
2. That Defendant be found guilty of Violations #2 and #3;
3. Revocation with a term of imprisonment of twelve months and one day; and
4. No supervised release to follow.[2]

---

[2] Whether the presiding District Judge should wait to enter a Judgment on these violations until after the charges initiate by the January 25 Report are resolved is entirely within his discretion. Again, the Court notes that Defendant was ordered to self-report to be taken into custody on May 7, 2018 to begin serving the agreed sentence recommended herein. D.E. 300.

7

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on District Judge Van Tatenhove's docket upon submission.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within fourteen days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981); *Thomas v. Arn*, 106 S. Ct. 466 (1985).

This the 4th day of May, 2018.

Signed By:
**_Hanly A. Ingram_**
United States Magistrate Judge