UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>DUSTIN CHAD LAWSON, )<br>)<br>Defendant. )<br>)<br>) | 6:13-CR-32-GFVT-HAI-2<br><br>RECOMMENDED DISPOSITION |

\*\*\* \*\*\* \*\*\* \*\*\*

On referral from District Judge Van Tatenhove (D.E. 255 at 2; D.E. 310 at 5), the Court considers reported violations of supervised release conditions by Defendant Dustin Lawson. Judge Van Tatenhove entered a Judgment against Defendant on April 18, 2014, for one count of conspiracy to distribute oxycodone, in violation of 21 U.S.C. § 846. D.E. 174 at 1. Defendant was sentenced to forty months of imprisonment followed by three years of supervised release. *Id*. at 2-3. He began his initial term of supervised release on November 30, 2015.

On May 5, 2016, the United States Probation Office ("USPO") submitted a Supervised Release Violation Report and subsequently submitted an Addendum. D.E. 238 at 1. The Supervised Release Violation Report and Addendum alleged that Defendant failed to report to the probation officer as directed on various occasions, left the judicial district without permission, and failed to notify the probation officer at least ten days prior to any change in residence or employment. *Id*. at 4. Each of these were Grade C violations. *Id*. The parties jointly requested that the undersigned release Defendant subject to the condition that he enroll in and complete a thirty-day inpatient substance abuse treatment program. *Id.* at 5. The undersigned adopted the parties' request and released Defendant. *Id*. After he completed the

inpatient substance abuse treatment program, Defendant appeared before the undersigned for an allocution hearing. *Id*. The undersigned recommended that the District Judge adopt the parties' joint recommendation that Defendant remain on supervised release for the original period, and under the conditions previously imposed, with the added condition that he be required to disclose the nature and circumstances of his conviction in this Court and his drug abuse history to any physician prescribing a controlled substance to him. *Id*. at 7-8. The District Judge accepted that recommendation on July 26, 2016. D.E. 240; D.E. 241.

On January 25, 2018, the USPO issued the Supervised Release Violation Report ("the January 25 Report") that initiated these proceedings.[1] The Report alleges that Defendant reported to the USPO on January 12, 2018, and told his probation officer that he took a methadone tablet, pursuant to a methadone maintenance treatment program, on that same day. Defendant informed Officer Tyler that, on January 9, he took the last one-half of an oxycodone tablet from his valid prescription. He denied use of any other controlled substances. Defendant submitted a urine sample on January 12 that ultimately tested positive for norfentayl, the metabolite of fentanyl, via laboratory testing. The Report charges three violations stemming from this conduct. First, as Violation #1, the Report charges that Defendant violated Standard Condition #7, which prohibits him from purchasing, possessing, using, distributing, or administering any controlled substance, except as prescribed by a physician. This is a Grade C violation. Second, as Violation #2, the Report charges that Defendant violated the prohibition

---

[1] The USPO submitted a second Supervised Release Violation Report on March 22, 2018 ("the March 22 Report") that charged Defendant with three violations of his supervised release. D.E. 302 at 2. At the final hearing on May 2, 2018, the parties jointly recommended a term of imprisonment of twelve months and one day, to run concurrently with any term of imprisonment imposed pursuant to the January 25 Report, and no term of supervised release to follow. *Id*. at 5. The United States moved to dismiss Violation #1. *Id*. at 3-4. The undersigned recommended dismissal of Violation #1, a finding of guilt as to Violations #2 and #3, and a sentence of twelve months and one day of imprisonment followed by no term of supervised release. *Id*. at 7. Defendant was ordered to self-report on May 7, 2018, to be taken into custody. D.E. 300 at 2. He reported at that that time. The undersigned's recommendation regarding the March 22 Report is pending before the District Judge.

2

against committing another federal, state, or local crime based on his criminal history and the possession of fentanyl, which is a violation of 21 U.S.C. § 844(a), and a Class E felony. This is a Grade B violation. Third, as Violation #3, the Report charges that Defendant violated Standard Condition #3, which requires him to answer truthfully all inquiries by the probation officer. This is a Grade C violation.

Under 18 U.S.C. § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. 18 U.S.C. § 3583(e)(3). Defendant was convicted of conspiracy to distribute oxycodone, a Class C felony. *See* 21 U.S.C. § 841(b)(1)(C); 18 U.S.C. § 3559(a)(3). Defendant's conviction carries a two-year maximum period of incarceration upon revocation. 18 U.S.C. § 3583(e)(3). There is no maximum term of supervised release that may be re-imposed. 18 U.S.C. § 3583(h); 21 U.S.C. § 841(b)(1)(C).

The Policy Statements in Chapter 7 of the Sentencing Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the particular violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438-39 (6th Cir. 2007) ("Although the policy statements found in Chapter Seven of the United States Sentencing Guidelines recommend ranges of imprisonment, U.S.S.G. § 7B1.4, such statements are 'merely advisory' and need only be considered by the district court before sentence is imposed.") (citation omitted). Under Section 7B1.1, Defendant's admitted conduct would qualify as Grade C violations with respect to Violations #1 and #3, and a Grade B violation with respect to Violation #2. Given Defendant's criminal history category of V (the category at the time of the conviction in this District) and a Grade B violation, his range, under the Revocation Table of Chapter 7, is eighteen to twenty-four months. U.S.S.G. § 7B1.4(a).

3

On February 6, 2018, this Court conducted an initial appearance pursuant to Rule 32.1 and set a final hearing following a knowing, voluntary, and intelligent waiver of the right to a preliminary hearing. D.E. 259. At the initial appearance, the United States made an oral motion for interim detention and Defendant argued for release. *Id*. Based on the heavy 18 U.S.C. § 3143(a) defense burden, the Court found detention was required and remanded Defendant to the custody of the United States Marshal. *Id*.

At the final hearing on March 5, 2018, Defendant was afforded all rights due under Rule 32.1 and § 3583. D.E. 263. Defendant contested the violations and the undersigned conducted an evidentiary hearing. *Id*. Following the presentation of the evidence, the Court continued the hearing to research an evidentiary issue. *Id*. The hearing was reconvened four days later, the Court heard argument and announced its findings that the United States had failed to prove the violations by a preponderance of the evidence, and Defendant was released subject to his existing supervised release conditions. D.E. 267. The undersigned subsequently recommended to the District Judge that Defendant be found not guilty of Violations #1-#3 because the government failed to prove the violations by a preponderance of the evidence. D.E. 269. The United States timely objected to the undersigned's recommended disposition. D.E. 278. Judge Van Tatenhove held an evidentiary hearing on May 1, 2018. D.E. 301. After conducting a *de novo* review pursuant to 28 U.S.C. § 636(b)(1)(c) and considering new evidence introduced at the May 1 hearing, Judge Van Tatenhove sustained the government's objection, overruled the undersigned's recommended disposition regarding the violations charged in the January 25 Report, and referred the matter to the undersigned for a final revocation hearing and a recommended disposition consistent with the Court's findings. D.E. 310 at 5. The undersigned held an allocution hearing on July 10, 2018, and Defendant was afforded all rights due under

Rule 32.1 and 18 U.S.C. § 3583. D.E. 322. At the beginning of the hearing, all parties agreed with the Court's interpretation that Judge Van Tatenhove found Defendant guilty of all three charged violations. This posture left only the appropriate sentence to be determined.

# I.

The Court has evaluated the entire record, the January 25 Report and accompanying documents, and the sentencing materials from the underlying Judgment. Additionally, the Court has considered all of the § 3553 factors incorporated into the § 3583(e) analysis.

The parties agreed that no term of supervised release following imprisonment is appropriate. Regarding a term of imprisonment, the United States argued for a sentence at the top of Defendant's Guideline Range, or twenty-four months, to run concurrently with any sentence imposed pursuant to the March 22 Report. In support of this recommendation, the United States first emphasized the connection between the nature and circumstances of the underlying conviction, which involved conspiracy to distribute oxycodone, an opiate, and the present violations, which involve fentanyl, a more serious and lethal opiate. This connection, the United States argued, increases the need to protect the public from future crimes and deter additional criminal conduct.

The United States also emphasized Defendant's extended history of noncompliance while on supervised release, including his previous violations for failing to report to the probation officer as directed, leaving the judicial district without permission, and failing to notify his probation officer at least ten days prior to any change in employment or address. The United States also emphasized Defendant's criminal record, as reflected in the presentence report, which indicates that he has committed a crime at least once every two years since 2001, when he was sixteen years old. These convictions include attempted assault of a fireman, resisting arrest,

fleeing or evading police, wanton endangerment, receiving stolen property, and theft by deception. The United States argued that Defendant's criminal history reflects a pattern of disrespect of the Court, the USPO, and law enforcement generally. This pattern, the United States emphasized, creates a need to protect the public and deter criminal conduct because many of the crimes throughout Defendant's criminal history posed a physical or economic danger to the public. Ultimately, the United States argued that a statutory maximum sentence at the top of Defendant's Guidelines Range, or two years of imprisonment, was justified by Defendant's significant criminal history and failure to conform his behavior to the Court's expectations. A sentence below the statutory maximum, the United States argued, would require trust in the Defendant that he has not earned.

Defense counsel argued for a term of imprisonment below Defendant's Guidelines Range, or twelve months and one day, to run concurrently with any sentence imposed pursuant to the March 22 Report. In support of this recommendation, counsel emphasized that Defendant denied using fentanyl under oath and that the undersigned previously recommended dismissal of the violations (*see* D.E. 269). However, counsel acknowledged that the record in this case is now substantially different due to the expert testimony introduced at the evidentiary hearing before Judge Van Tatenhove (*see* D.E. 301) and the finding that Defendant's previous testimony was outweighed by that expert testimony (*see* D.E. 310). Regarding Defendant's history and characteristics, counsel encouraged the Court to consider the positive changes Defendant has made in his life and introduced two character witness statements describing those positive life changes. *See* D.E. 321. Specifically, counsel noted that Defendant makes religious jewelry and attempts to share his story with the public.

Ultimately, counsel argued that any term of imprisonment above twelve months and one day would be greater than necessary to serve the § 3553 goals imported into the § 3583 analysis. The Court previously recommended twelve months and one day on the violations charged in the March 22 Report. Counsel emphasized that any term of imprisonment above this recommended term would be punitive and would not serve the rehabilitation or protection goals set out in § 3553.

Defendant addressed the Court and described the positive changes he has made, including sharing his religious experiences with the public and those incarcerated at the jail. Defendant described the motivation his family provides to him, including his desire to set a positive example for his newborn child. Defendant maintained that he did not take fentanyl or any unauthorized oxycodone pills. Defendant also requested that the Court recommend that the Bureau of Prisons place him in a halfway house or other transitional program to help him transition after incarceration.

## II.

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the § 3583(e) analysis, as well as the Guidelines Range. The nature and circumstances of Defendant's underlying conviction are serious. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release). Defendant was involved in a large scale drug trafficking scheme that posed a significant danger to him and the community.

The Court has also considered Defendant's history and characteristics. Although Defendant may have implemented positive changes, the sentence must reflect his long and dangerous criminal history. This history includes harm to the community through violence and drug trafficking, as well as harm to the legal system by a pattern of disrespect for the USPO and law enforcement. Defendant's underlying conviction involved a conspiracy to distribute oxycodone. He indicated in the presentence report that he used oxycodone, an opiate, during the commission of this conspiracy. Now, Defendant has used fentanyl, an even more dangerous opiate. Defendant's fentanyl use constitutes criminal conduct, increases the risk that he will commit additional criminal conduct, fosters drug trafficking, and endangers public safety. Defendant's presentence report indicates that he has a criminal history category of V, which is very significant for a thirty-four-year-old man. This high criminal history category, established by the large number of dangerous convictions, increases the risk that Defendant will recidivate and continue to pose a danger to the community. Incarceration is necessary to protect the public and deter future criminal activity. The need to provide Defendant with needed education, training, or treatment is lessened in this case because Defendant continues to use opiates despite completing multiple substance abuse treatment programs.

The Court reminds Defendant that the Guidelines suggest that the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender; the particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). Defendant's breaches of the Court's trust are significant. He continues to violate his supervised release after the Court previously showed leniency by allowing him to complete

substance abuse treatment in lieu of revocation. Deception and noncompliance define his supervised release experience, and the Court has not found any mitigating factors that favor leniency. Incarceration is necessary to address Defendant's breach of the court's trust.

The need to avoid unwarranted sentencing disparities is addressed by a sentence within Defendant's Guidelines Range. A sentence below the Guidelines Range, as requested by counsel, is inappropriate because Defendant continues to breach the Court's trust by engaging in manipulation and a pattern of deception. For the reasons stated above, the Court finds that a sentence of twenty-four months of imprisonment is sufficient, but not greater than necessary, to meet the § 3553(a) factors incorporated into this analysis. *See* 18 U.S.C. § 3583(e).

A court also may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration actually imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). The post-revocation cap depends on the "term of supervised release authorized by statute for the offense that resulted in the original term of supervised release." *See* 18 U.S.C. § 3583(h). There is no maximum term of supervised release that may be re-imposed upon revocation. 18 U.S.C. § 3583(h); 21 U.S.C. § 841(b)(1)(C).

The parties jointly recommended no term of supervised release to follow incarceration. Defendant has consistently been unwilling to take advantage of the USPO's resources and the Court's trust while on supervision. His pattern of noncompliance demonstrates that he is not a good candidate to benefit fully from resources that may be provided during supervised release, and the Court believes that others can benefit more from an investment of the public's resources. Accordingly, supervised release is inappropriate following imprisonment.

A recommendation to the Bureau of Prisons to place Defendant in a halfway house or other transitional program is inappropriate on this record. Defendant has consistently

disregarded the authority of the Court and law enforcement. Placement in a halfway house or other transitional program is appropriately within the discretion of the Bureau of Prisons.

Based on the foregoing, the Court **RECOMMENDS**:

1. Revocation with a term of imprisonment of twenty-four months of imprisonment;

2. Assessment for placement in a halfway house or other appropriate transitional placement, at the discretion of the Bureau of Prisons; and

3. No supervised release to follow.[2]

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on District Judge Van Tatenhove's docket upon submission.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within fourteen days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981); *Thomas v. Arn*, 106 S. Ct. 466 (1985).

This the 11th day of July, 2018.

---

[2] The parties recommended, and the undersigned agrees, that a single judgment for both sets of violations charged in the January 25 Report and the March 22 Report is appropriate. Defense counsel noted that U.S.S.G. § 7B1.3(f) mandates consecutive sentences on "[a]ny term of imprisonment imposed upon the revocation of . . . supervised release [and] any sentence of imprisonment that the defendant is serving, whether or not the sentence of imprisonment being served resulted from the conduct that is the basis of revocation of . . . supervised release."

Signed By:



*Hanly A. Ingram*

**United States Magistrate Judge**